UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY HAIRE,

     Plaintiff,      Case No. 21-cv-10967

v.             Paul D. Borman
              United States District Judge
FARM & FLEET OF RICE LAKE, INC.
d/b/a BLAIN'S FARM & FLEET OF
JACKSON, a Wisconsin corporation,

     Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (ECF NO. 8)

  This is an employment discrimination case arising out of Plaintiff Stacey Haire's employment with Defendant Farm and Fleet of Rice Lake, Inc., d/b/a Blain's Farm & Fleet of Jackson. Plaintiff asserts claims against Defendant for sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and the Michigan Elliot-Larsen Civil Rights Act, and for violation of the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act. Now before the Court is Defendant's Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 8), which has been fully briefed. The Court does not believe

that oral argument will aid in its disposition of the motion; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, the Court DENIES Defendant's partial motion to dismiss for lack of personal jurisdiction.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Relevant Facts

For the purposes of ruling on Defendant's motion to dismiss, the Court takes the factual allegations in Plaintiff's Complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

Plaintiff Stacey Haire began working for Defendant Blain's Farm & Fleet of Jackson on or about September 19, 2018, as a Sales Associate in the Candy Department. (ECF No. 1, Complaint ¶¶ 11-12.) As a Sales Associate, Plaintiff was primarily responsible for stocking shelves, setting prices, providing customer service, maintaining merchandise displays, cleaning retail areas, product inventory, moving excess items and empty pallets to the warehouse, and breaking down cartons. (*Id.* ¶ 13.)

All employees in the Candy Department, including Plaintiff, were supervised by one of Defendant's four Assistant Store Managers (ASMs). (*Id.* ¶ 14.) Plaintiff was initially supervised by an ASM with the initials "AL." (*Id.* ¶ 15.) Defendant

2

delegated to AL the authority to direct Sales Associates like Plaintiff in their employment, to evaluate their performance, initiate and impose disciplinary action, and otherwise substantially affect the terms and conditions of their employment. (*Id.* ¶ 16.)

Plaintiff was also directed in her day-to-day work activities within the Candy Department by a Department Head with the initials "KG." (*Id.* ¶ 17.) KG reported directly to the ASM, AL. (*Id.* ¶ 18.) Plaintiff describes KG as "extremely nosey, self-centered and manipulative." (*Id.* ¶ 19.) Plaintiff states that KG "seems to believe that his status as Department Head entitled him to exercise supervisory authority over Sales Associates like Plaintiff," and that "he acts on that belief by assigning daily tasks in a manner that enables him to bully and/or punish Sales Associates at his will, and avoid his own work responsibilities." (*Id.* ¶ 20.)

Plaintiff alleges that, starting in early November 2018, KG started making sexually inappropriate comments to Plaintiff, and also became inappropriately personal and familiar with her. (Compl. ¶ 21.) For example, when Plaintiff got her hair cut, KG commented that Plaintiff did something with her hair, and Plaintiff acknowledged that she got a "trim." (*Id.* ¶ 22.) KG responded that he "would not mind getting some trim, too," injecting sexual inuendo into the conversation. (*Id.*)

3

Plaintiff asserts that her negative reaction to KG's comment seemed to motivate him to become more aggressive with his improper comments and behavior toward her, including contriving opportunities to invade her personal space and touch her body. (*Id.* ¶ 23.) For example, KG frequently positioned himself to be standing behind Plaintiff when she was working so he could stare at her buttocks, and he repeatedly came up from behind her, under the guise that he was concerned that her walkie-talkie looked like it might fall from her belt holster, as an excuse to touch Plaintiff in her waist and buttocks area. (*Id.* ¶ 24.)

In mid-to-late November, Plaintiff had a 60-day evaluation with AL. (Compl. ¶ 26.) Plaintiff reported to AL that she was uncomfortable with the manner in which KG was interacting with her, and she specifically discussed the "trim" comment, that KG stared at her from behind, and KG's "walkie-talkie move" to touch her buttocks. (*Id.* ¶ 26.) AL responded that he was sorry for KG's behavior and that "he would look into it." (*Id.* ¶ 27.)

Plaintiff asserts that KG's behavior did not improve following her report to AL, because he continued to stare at her from behind and invade her personal space and touch her. (Compl. ¶¶ 28, 30.) Plaintiff further alleged that KG started to tease and bully her. (*Id.*) For example, when she was in the Defendant's warehouse and climbing a ladder to stock or remove inventory from a shelf, KG would stand at the

bottom of the ladder and shake it, saying things like "you better be careful up there little girl," or "are you scared up here, girly?" (*Id.* ¶ 29.)

In early to mid-December, Defendant's management was reorganized. AL became the acting Store Manager, and an ASM with the initials "JW" was assigned responsibility for supervising KG and Plaintiff in the Candy Department. (Compl. ¶ 31.) Plaintiff asserts that she complained about KG's behavior to JW "multiple times," but that no remedial action resulted. (*Id.* ¶ 32.)

In early January 2019, Plaintiff reported her concerns about KG to a female ASM with the initials "SW." (Compl. ¶ 33.) Plaintiff states that because SW was a woman, Plaintiff thought she would be "more in-tune with Plaintiff's objections to KG's behavior." (*Id.* ¶ 34.) However, no remedial action resulted from this first report to SW. (*Id.* ¶ 36.)

Plaintiff alleges that, by January 2019, KG had developed a friendship with the supervising ASM of the Candy Department, JW, and that KG thus felt confident that he could do and get away with anything he wanted. (Compl. ¶ 37.) Plaintiff claims that KG started making offensive comments to Plaintiff about one of their co-workers (a friend of Plaintiff's) and his sexual orientation, stating that several people thought the co-worker was gay. (*Id.* ¶¶ 38-39.) KG also discussed with Plaintiff his purchase of undergarments for his girlfriend from Victoria's Secret, and commented

about how the undergarments would fit Plaintiff. (*Id.* ¶ 40.) Plaintiff states that she told KG she "did not appreciate" this discussion about undergarments, and that KG just laughed in response. (*Id.* ¶ 41.)

In late January 2019, Plaintiff had a second meeting with SW and reported her objections to the way KG spoke to and interacted with her. (Compl. ¶ 42.) Plaintiff states that she complained that KG was spreading gossip about her co-worker's sexual orientation, about KG's comments regarding the Victoria Secret undergarments, that KG stared at her buttocks and touched her inappropriately, and that she had reported most of that conduct to AL at her 60-day evaluation but that nothing had been done about it. (*Id.* ¶ 43.) SW told Plaintiff that she would look into these complaints, but again nothing was done about KG's behavior. (*Id.* ¶ 44.)

KG's behavior continued. (Compl. ¶ 45.) KG discussed his strong opinions about transgender issues, which Plaintiff found offensive and irrelevant to Defendant's business interests. (*Id.* ¶¶ 45-47.) Plaintiff complained to SW about KG's comments and behavior a third time in March 2019. (*Id.* ¶ 48.) SW listened and appeared sympathetic, but KG's comments and behavior nevertheless continued. (*Id.*) Plaintiff asserts that, by this time, KG was aware that Plaintiff was complaining about his behavior and he developed an animus toward her. (*Id.* ¶ 49.) He would bombard her with assignments to perform various tasks during the work

day and would leave multiple notes for her, which was far more work than she could possibly complete in the time that she was scheduled to work. (*Id.* ¶ 50.)

Because Defendant's store management had failed to take any remedial action against KG in response to Plaintiff's multiple complaints, she next contacted Defendant's corporate human resources department and related all the issues she had reported to AL, JW, and SW. (Compl. ¶ 51.) The human resources employee said he was concerned and sympathetic but, again, no remedial action was taken by Defendant regarding KG. (*Id.* ¶ 52.)

Plaintiff claims that she went as far as threatening to quit when discussing her concerns with SW and the human resources employee, but they repeatedly asked her not to, and to give the company a chance to rectify the situation. (*Id.* ¶ 53.) Plaintiff also asked to be transferred to a different department, and the ASMs, "SW and PW," said she could transfer "as soon as they could create an opening in the Seasonal Department, but the transfer never happened." (*Id.* ¶ 54.) Plaintiff alleges that KG's conduct made her feel trapped and dread going to work, and that coworkers referred to Plaintiff as being KG's "bitch." (*Id.* ¶¶ 55-57.) Plaintiff asserts that she had no other employment opportunities close to home that she was qualified for, and she became increasingly anxious, despondent, and depressed. (*Id.* ¶¶ 58-59.)

7

On or about April 3, 2019, as Plaintiff was preparing to go to work, she experienced a serious mental health episode that required her immediate hospitalization. (Compl. ¶ 60.) Plaintiff states that she has a history of suffering from post-traumatic stress disorder (PTSD), and that the workplace stress triggered the mental health episode. (*Id.* ¶ 61.) Plaintiff's husband called her absence into Defendant. (*Id.* ¶ 62.)

After Plaintiff was discharged from the hospital on or about April 6, 2019, she met with SW and AL to explain that she would not be able to return to work for at least two weeks, pending approval by her doctors. (Compl. ¶ 63.) Plaintiff also gave SW and AL a note from her doctor, which indicated on the letterhead that the doctor's office was a "psychiatric" facility. (*Id.* ¶ 64.) Plaintiff states that the letterhead "seemed to catch SW's attention," and that SW seemed "particularly nosey about Plaintiff's illness." (*Id.*)

Two weeks later, Plaintiff's doctor provided her with a medical certification, extending her medical leave, and Plaintiff brought that note to SW and JW at Defendant's store. (Compl. ¶ 67.) During the closed-door meeting, SW pressed Plaintiff about the nature of the mental health episode she suffered, and Plaintiff felt obligated to explain the specifics of why she was hospitalized, the nature of the mental health episode she suffered, and some of her mental health history, including

that she suffered from PTSD. (*Id.* ¶¶ 68-69.) Plaintiff alleges that SW and JW appeared to be more judgmental than concerned about Plaintiff's condition, but the meeting ended with Plaintiff's leave being extended. (*Id.* ¶¶ 70-71.)

After the meeting, and after Plaintiff had left Defendant's building, JW disclosed what he learned about Plaintiff to KG, and KG in turn started spreading gossip about Plaintiff, disclosing details about her medical condition and the mental health episode she experienced to coworkers. (Compl. ¶¶ 72-73.) Multiple coworkers reported this to Plaintiff, and Plaintiff felt humiliated. (*Id.* ¶¶ 74-75.) Plaintiff then made a Facebook post about the improper disclosure of her confidential information at work, and she also called Defendant's human resources employee to complain that her confidential mental health information had been improperly disclosed to KG. (*Id.* ¶¶ 76-77.) SW contacted Plaintiff to say that she saw Plaintiff's Facebook post, that she was upset that the information was improperly disclosed, and to confirm that it "absolutely should not have happened." (*Id.* ¶ 78.)

Defendant subsequently conducted an investigation into this incident. (Compl. ¶ 79.) KG denied knowing about Plaintiff's condition or the reason why she was unable to return to work, but JW admitted disclosing to another employee that Plaintiff's absence from work was due to a "mental health condition." (*Id.* ¶¶ 80-81.)

9

Other employee witnesses denied knowing anything when interviewed because, Plaintiff contends, they perceived their jobs were in jeopardy if they confirmed being told specifics about Plaintiff's health condition. (*Id.* ¶ 82.) Defendant also investigated Plaintiff's complaints about KG's actions, and KG admitted to some of the comments. (*Id.* 83.) Defendants nevertheless concluded that most of Plaintiff's complaint was unsubstantiated and thus issued JW a written warning and KG a counseling memo. (*Id.* ¶ 84.)

Plaintiff alleges she was "mortified" by Defendant's final response to her complaints, and that Defendant's failure to take prompt, effective and meaningful remedial action against KG and JW triggered more symptoms of Plaintiff's PTSD condition and "signaled to Plaintiff that she would continue to be required to work in a hostile work environment." (Compl. ¶¶ 85-86.) Plaintiff's treating physicians and counselor agreed that Plaintiff should not return to work because her symptoms had not improved and Defendant could not provide a safe work environment. (*Id.* ¶ 87.) Defendant then terminated Plaintiff's employment due to her inability to return to work. (*Id.* ¶ 88.) Plaintiff's Complaint does not state the date of her termination.

## B.   Procedural History

On or around June 24, 2019, Plaintiff filed a Charge of Discrimination with the Michigan Department of Civil Rights (MDCR), which was cross-filed with the

10

federal Equal Employment Opportunity Commission (EEOC). (ECF No. 1-1, EEOC Charge of Discrimination, PageID.31.) The Charge states that the "cause of discrimination [is] based on" "Retaliation, Sex, Disability," and lists the "date of most recent or continuing discrimination" as April 4, 2019. (*Id.*) The Charge states:

> I am a woman with a disability and believe I was sexually harassed and harassed most recently around April 4, 2019, due to my sex, disability and in retaliation for participating in a protected activity on or around March 15, 2019.
>
> I was hired by the respondent on September 19, 2018, and currently work as a sales associate at 3555 O'Neill Drive in Jackson, Michigan.
>
> **Harassment/Not Sexual 04/04/2019        Retaliation, Disability**
>
> Most recently on or around April 4, 2019, I have been subjected to harassment by the respondent's representatives. The respondent's management shared my personal health information with my colleagues. The respondent's representatives have made derogatory remarks regarding my disability on multiple occasions. I reported the harassment to the respondent's management and nothing was done. This created a hostile working environment. I believe my disability and participation in a protected activity were factors in the harassment.
>
> **Sexual harassment        04/04/2019        Sex**
>
> Most recently on or around April 4, 2019, I have been subjected to sexual harassment by the respondent's male representative. The respondent's representative would make comments that were sexual in nature and make comments about my body. I reported the sexual harassment on or around March 15, 2019, to the respondent's management and nothing was done.

11

(*Id.*) The Charge states that it is based on the Americans with Disabilities Act (ADA), the Michigan Elliot-Larsen Civil Rights Act (ELCRA), the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), and Title VII of the Civil Rights Act of 1964 (Title VII). (*Id.*)

On January 29, 2021, the EEOC issued a Dismissal and Notice of Rights to Plaintiff. (ECF No. 1-2, Notice of Rights.)

On April 28, 2021, Plaintiff filed her Complaint in this case, asserting claims against Defendant for: (1) Count I – hostile work environment sexual harassment in violation of Title VII; (2) Count II – retaliation in violation of Title VII; (3) Count III – hostile work environment sexual harassment in violation of the ELCRA; (4) Count IV – retaliation in violation of the ELCRA; (5) Count V – violation of the ADA; and (6) Count VI – violation of the PWDCRA. Plaintiff seeks damages, injunctive relief, costs, and attorneys' fees. (Compl.)

On July 9, 2021, Defendant filed both an Answer (ECF No. 7) and a Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 8, Def.'s Mot.). Defendant argues in its partial motion to dismiss that the Court should dismiss Count II (Retaliation in Violation of Title VII) and Count IV (Retaliation in Violation of the ELCRA) in their entirety for failure to state a claim, because Plaintiff fails to plead that she suffered from an adverse employment action or that there was a causal

connection between any protected activity and an adverse employment action. Defendant further argues that the Court should dismiss Plaintiff's Title VII claims in Counts I and II that are outside the scope of her EEOC Charge, for failure to exhaust administrative remedies and untimeliness.

Plaintiff filed a Response in Opposition to Defendant's Partial Motion to Dismiss. (ECF No. 11, Pl.'s Resp.) Plaintiff argues that her Complaint states cognizable retaliation claims under Title VII and the ELCRA, including sufficiently alleging adverse employment actions and causation. Plaintiff further argues that the claims alleged in Counts I and II of her Complaint are sufficiently within the scope of her EEOC charge. Finally, Plaintiff requests that she be allowed to amend her Complaint to cure any pleading deficiencies if the Court finds her initial pleading deficient.

Defendant filed a reply brief in support of its Partial Motion to Dismiss. (ECF No. 12, Def.'s Reply.) Defendant again argues that Plaintiff fails to sufficiently plead facts that she has suffered from an adverse employment action or to establish causation. Defendant further contends that Plaintiff's four-paragraph EEOC charge is conclusory and fails to include the additional, detailed factual allegations in Plaintiff's Complaint. Finally, Defendant argues that Plaintiff should not be allowed

13

to amend her Complaint because the deficiencies would not be curable by amendment.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than

14

a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal

15

view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). "EEOC charges and related documents, including right to sue letters, are public records of which the Court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment."). *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862-63 (N.D. Ohio 2013).

## III.  ANALYSIS

### A.    Plaintiff's Title VII and ELCRA Retaliation Claims (Counts II and IV)

Plaintiff alleges in Count II of her Complaint (Retaliation in Violation of Title VII) that she made several complaints to Defendant of sexual harassment by KG, but that JW ignored her complaints and that JW and KG retaliated against her by improperly disclosing her personal health information and attempted to "impugn her credibility by characterizing her as mentally and emotionally unstable and/or ill."

16

(Compl. ¶¶ 104-07.) Plaintiff claims that Defendant had knowledge of JW's and KG's retaliatory conduct and failed to take effective remedial action against them, and that "Defendant's decision to slap JW and KG on the risk [sic] for disclosing Plaintiff['s] confidential mental health information to their coworkers sent a clear signal to Plaintiff, intentionally, that Defendant would not remedy the hostile work environment that Plaintiff was required to work in." (*Id.* ¶ 109.)

Plaintiff alleges in Count IV of her Complaint (Retaliation in Violation of the ELCRA) that "[t]he acts of retaliation by Defendant's management agent, JW, and KG, which violate Title VII, as outlined in Count II, also violated the retaliation prohibitions imposed by the ELCRA." (Compl. ¶ 125.)

Both Title VII and the ELCRA prohibit retaliation against an employee "because [she] has opposed any practice made an unlawful employment practice by" the Act. *See* 42 U.S.C. § 2000e-3(a); Mich. Comp. Laws § 37.2701(a). A plaintiff "may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir. 2003); *see also Spengler v. Worthington Cylinders,* 615 F.3d 481, 491-92 (6th Cir. 2010) (applying the *McDonnell Douglas* framework to a retaliation claim). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Mickey*

17

*v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523 (6th Cir. 2008) (internal quotation marks omitted).

To establish a prima facie case of retaliation under Title VII and the ELCRA, a plaintiff must allege sufficient facts that would support a finding that: (1) she engaged in Title VII protected activity; (2) the defendant employer knew that she engaged in that protected activity; (3) the employer subsequently took an adverse employment action against her; and (4) the adverse action was causally connected to the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013); *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019).

Defendant in this case seeks dismissal of Plaintiff's retaliation claims in Counts II and IV of her Complaint, in their entirety, for failure to state a claim. (Def.'s Mot. at pp. 9-18, PageID.93-102.) Specifically, Defendant argues that Plaintiff fails to plead that she was subjected to an adverse employment action (prong 3), or that there is a causal link between her protected activity and an adverse employment action (prong 4).

In the discrimination context, a plaintiff is not required to prove a prima facie case to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (noting the Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading

18

standard that plaintiffs must satisfy in order to survive a motion to dismiss"); *Jackson v. Crosset Co.*, 33 F. App'x 761, 762 (6th Cir. 2002) ("[T]he *McDonnell Douglas* framework is an evidentiary standard, not a pleading standard."). In fact, the Supreme Court has rejected the argument that a Title VII complaint is subject to any kind of heightened pleading standard, because this would "too narrowly constric[t] the role of the pleadings." *Swierkiewicz*, 534 U.S. at 511 (alteration original) (quotation omitted). However, this does not mean that the pleading rules in discrimination cases are any less stringent than pleading standards for other federal causes of action. *See Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 449 (6th Cir. 2018) (noting *Swierkiewicz* "offers no gateway for a plaintiff to side-step the plausibility standard laid out in *Twombly* and *Iqbal*"). Instead, "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz*, 534 U.S. at 511.

While a plaintiff need not establish a prima facie case at the pleading stage, the elements of a prima facie case are nonetheless aspects to consider when determining the plausibility of a discrimination claim. *See, e.g.*, *Towns v. Memphis/Shelby Cnty. Health Dep't*, No. 17-cv-02626, 2019 WL 639050, at *4 (W.D. Tenn. Jan. 25, 2019), *Magistrate Judge's report and recommendation adopted*, 2019 WL 639025 (W.D. Tenn. Feb. 14, 2019) ("While a Title VII plaintiff need not establish a *prima facie* case at the motion to dismiss stage, courts have

19

looked to the *prima facie* requirements when determining whether a Title VII plaintiff has pleaded an actionable claim."); *White v. Adena Health Sys.*, No. 2:17-cv-593, 2018 WL 3377087, at *4 (S.D. Ohio July 11, 2018) (discussing the prima facie elements in the context of a motion to dismiss several Title VII claims). Still, the Court must ultimately determine plausibility by employing its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Court will analyze Plaintiff's Title VII and ELCRA claims together as the standards for materiality and causation are similar. *See Hall v. City of Dearborn*, No. 20-10198, 2021 WL 4864219, at *11 (E.D. Mich. Oct. 19, 2021) (citations omitted).

### 1. Plaintiff has sufficiently pleaded that she was subjected to an adverse employment action (prong 3)

Plaintiff alleges in her Complaint that Defendant "ignored her requests that [it] take remedial action to stop KG from" engaging in sexually offensive conduct, and then retaliated against her for reporting alleged sexual harassment by (1) disclosing her medical information to KG and other employees, and (2) that JW and KG attempted to "disparage" Plaintiff and her credibility by characterizing her as mentally and/or emotionally unstable. (Compl. ¶¶ 106-07.)

Defendant argues that these alleged actions do not constitute materially adverse actions under either Title VII or the ELCRA. (Def.'s Mot. at pp. 9-13, 16-17, PageID.93-97, 100-01.) Plaintiff argues in response that she has sufficiently alleged that Defendant retaliated against her after she reported KG's harassment by (1) failing to take remedial action, (2) engaging in "further, escalated harassment by" KG, (3) illegally disclosing Plaintiff's confidential and personal medical information, and (4) spreading rumors and disparaging comments about Plaintiff's mental state. (Pl.'s Resp. at p. 18, PageID.354.) Plaintiff claims that the above actions led to "an extreme exacerbation of [her] PTSD condition that eventually led her to be unable to work." (*Id.*)

In the retaliation context, the "plaintiff's burden of establishing a materially adverse employment action is less onerous ... than in the anti-discrimination context. A materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)); *see also Taylor*, 703 F.3d at 336 ("In order to establish an adverse employment action, [the plaintiff] 'must show that a reasonable employee would have found the challenged action materially adverse, which in this

21

context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'") (quoting *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 639 (6th Cir. 2009)). The *Burlington* standard must be applied on a case-by-case basis, and "actions not materially adverse for purposes of an anti-discrimination claim [may] qualify as such in the retaliation context." *Michael*, 496 F.3d at 596 (finding that "[t]he retaliatory actions alleged by Michael, including her brief placement on paid administrative leave and the 90-day performance plan, appear to meet this relatively low bar"). However, even under this more lenient standard, Title VII does not protect against "all retaliation, only from retaliation that produced injury or harm." *Taylor*, 703 F.3d at 336 (quoting *Burlington*, 548 U.S. at 67).

The Michigan Court of Appeals has adopted the same standard for materiality under the ELCRA. *See White v. Dep't of Transp.*, 334 Mich. App. 98, 120-21 (2020) (adopting the "reasonable employee" standard articulated in *Burlington* for determining whether an employer has committed a retaliatory adverse employment action under the ELCRA).

Defendant argues that JW's and/or KG's alleged attempts to "disparage" Plaintiff's credibility and spread gossip about her is not a materially adverse employment action. (Def.'s Mot. at p. 10, PageID.94.) Defendant characterizes these

22

actions as falling into the category of "petty slights or minor annoyances that take place at work." (*Id.*, citing *Stewart v. Esper*, 815 F. App'x 8 (6th Cir. 2020), and *Jones v. City of Allen Park*, 167 F. App'x 398, 406 (6th Cir. 2006).) Defendant further contends that JW's and KG's alleged disclosure of Plaintiff's "confidential mental health information to … coworkers" is not an adverse employment action. (Def.'s Mot. at p. 11, PageID.95.) Defendant relies on two district court decisions for this second argument, *Reitz v. Ford Motor Co.*, No. 3:16-CV-00765, 2019 WL 4675387 (W.D. Ky. Sept. 25, 2019) and *Stevenson v. Delta Airlines, Inc.*, 251 F. Supp. 3d 265 (D.D.C. 2017). (*Id.*)

Plaintiff argues in response that she has sufficiently alleged adverse employment actions to support her retaliation claims by alleging that Defendant retaliated against her "through its failure to take remedial action, its engagement in further, escalated harassment by its management agent, KG, illegal disclosure by management of [Plaintiff's] confidential and personal medical information, and tolerance and participation in the spread of rumors and disparaging comments about [Plaintiff's] mental state." (Pl.'s Resp. at p. 18, PageID.354.)

The Court finds that Plaintiff's allegations that Defendant took materially adverse actions against her in the wake of her making several sexual harassment complaints, construed in the light most favorable to Plaintiff and accepted as true,

23

are sufficiently plausible to make out the third element of Plaintiff's prima facie case for retaliation under Title VII and the ELCRA. In this case, Plaintiff alleges that, despite her repeated complaints to two different Assistant Store Managers and to the corporate Human Resources department about KG's sexually harassing treatment of and behavior toward her, no remedial action was taken, and that KG's behavior instead escalated. She further alleges that as a result of her complaints, ASM JW disclosed personal and confidential information about Plaintiff's mental health condition and the reason for her leave of absence from work to KG, and that this disclosure resulted in the spreading of gossip about Plaintiff and the disclosure of specific details about Plaintiff's medical condition and the mental health episodes she experienced to Plaintiff's coworkers. Plaintiff claims that Defendant's failure to take prompt, effective and meaningful remedial action as a result of these actions exacerbated her PTSD and eventually led to her being unable to return to work. These allegations are sufficient to allege actions that would dissuade a reasonable employee from making or supporting a charge of discrimination. *See Burlington*, 548 U.S. at 68.

Defendant attempts to minimize Plaintiff's allegations as mere petty slights or annoyances. However,  the Supreme Court in *Burlington* was quick to point out that

in determining whether a reasonable person would be dissuaded, the overall circumstances must be considered:

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others."

*Burlington*, 548 U.S. at 69 (internal citation omitted); *see also White*, 334 Mich. App. at 119-20 ("*Burlington* rejects the idea that certain actions are always or never materially adverse – each case is to be considered on its own facts and not by application of a general rule that certain actions are, by nature, not materially adverse."). Thus, whether a particular action is materially adverse "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."

*Burlington*, 548 U.S. at 69 (internal quotation marks omitted) (quoting *Oncale*, 523

U.S. at 81); *White*, 334 Mich. App. at 122 ("Per *Burlington*, 'it is for the jury to

decide whether anything more than the most petty and trivial actions against an

employee should be considered "materially adverse" to [the employee] and thus

constitute adverse employment actions.'") (quoting *Crawford v. Carroll*, 529 F.3d

961, 973 n.13 (11th Cir. 2008)).

Taking Plaintiff's allegations as true, disclosing her personal and confidential

medical mental health information to coworkers and spreading rumors or gossip

characterizing Plaintiff as mentally and/or emotionally unstable might well have

"dissuaded a reasonable worker from making or supporting a charge of

discrimination," and certainly appears to be more than "petty slights or minor

annoyances that often take place at work and that all employees experience." *See*

*Burlington*, 548 U.S. at 68; *see also Morris v. Austin Peay State Univ.*, 438 F. Supp.

3d 842, 846-47 (M.D. Tenn. 2020) (finding plaintiff's retaliation claim sufficiently

alleged where she claimed defendant's action (including public disclosure of her

name when she wanted to remain anonymous) caused her emotional harm,

"suggesting that she was subjected to more than run-of-the-mill, cold shoulder

treatment). These allegations meet the "relatively low bar" for a materially adverse

action for purposes of pleading a retaliation claim. *See Michael*, 496 F.3d at 596.[1]

Defendant's reliance on *Reitz v. Ford Motor Co.*, No. 3:16-CV-00765, 2019

WL 4675387 (W.D. Ky. Sept. 25, 2019), as a bar to Plaintiff's retaliation claim is

unpersuasive.[2] In *Reitz*, the court held, when ruling on defendant's motion for

summary judgment, that the internal disclosure and discussion of plaintiff's medical

information among six employees was not a materially adverse employment action,

noting that the plaintiff cited no case in which the disclosure of an employee's

medical information was found to be a materially adverse action for a retaliation

---

[1] Defendant's reliance in its Motion on *Stewart v. Esper*, 815 F. App'x 8 (6th Cir. 2020) and *Jones v. City of Allen Park*, 167 F. App'x 398 (6th Cir. 2006) to the contrary is misplaced. The court in *Stewart* found that the plaintiff failed to point to anything materially adverse that resulted from an alleged rumor that the plaintiff was going to revoke another employee's security access, characterizing that rumor as a "petty slight." *Stewart*, 815 F. App'x at 19. That is distinguishable from the allegations in this case of rumors and gossip that Plaintiff was mentally unstable. In *Jones*, the court applied the pre-*Burlington* standard for adverse actions, requiring an ultimate employment decision such as termination, demotion, diminished pay, etc. *Jones*, 167 F. App'x at 406.

[2] The Court further finds that Defendant's reliance on *Stevenson v. Delta Airlines, Inc.*, 251 F. Supp. 3d 265 (D.D.C. 2017), also fails to support Defendant's argument. In *Stevenson*, the court found that the plaintiff's complaint to her manager about the disclosure of her personal medical information to her coworkers was not a protected activity under Title VII because it did not involve discrimination on the basis of race, color, religion, sex, or national original, but the court did not address whether such conduct was an adverse action supporting a retaliation claim. *See id.* at 268.

claim. *Reitz*, 2019 WL 4675387 at *11. The court went on to state, however, that "even if there was case law to support" plaintiff's contention, "no reasonable employee would be dissuaded from making a charge of discrimination *based on the evidence she cites*." *Id.* (emphasis added). This record evidence included that plaintiff's medical information was discussed only in an email chain among six employees – three Labor Relations employees, two Medical Department employees, and one employee who handled workers' compensation claims – and involved a discussion of "what kind of leave [Reitz] is on; whether it was medically supported; whether an independent medical examination should be obtained; when [Reitz] could be expected to return to work; and whether [Reitz's] medical bills were being paid through workers' compensation." *Id.* Further, the plaintiff only became aware of this email chain during the litigation. *Id.* The court concluded that:

> A reasonable employee would not be dissuaded from making a charge of discrimination based on an email that she has never seen. Further, Reitz's medical leave necessitated this conversation. It is unreasonable for an employee to go on medical leave [and] expect their employer not to discuss her medical situation.

*Id.*

The facts in *Reitz* are readily distinguishable from the facts of this case, where Plaintiff's personal and confidential medical mental health information was allegedly shared with and discussed among her coworkers who had no legitimate,

28

business-related reason to know such personal details, and where Plaintiff learned of this improper disclosure during her employment, even if she was on leave at the time. This improper disclosure, coupled with Plaintiff's allegation that this disclosure led to spreading gossip and specific details about Plaintiff's medical condition amongst her coworkers, taken as true, constitute sufficient materially adverse actions under the facts in this case supporting Plaintiff's retaliation claims under Title VII and the ELCRA.

Plaintiff further alleges that as a result of her complaints about KG's behavior, no remedial action was taken and instead KG's improper behavior escalated. This too supports a finding of a materially adverse action. *See Bender v. Gen. Dynamics Land Sys., Inc.*, No. 2:19-cv-13177, 2020 WL 4366049, at *7 (E.D. Mich. July 30, 2020) (finding, in part, that defendant's "repeated alleged refusal to address Plaintiff's complaints about discrimination at the company, could plausibly have dissuaded her from continuing to engage in protected conduct and could well dissuade any reasonable worker from pursuing a discrimination claim").

Accordingly, the Court finds that Plaintiff has plausibly alleged materially adverse employment actions to support her retaliation claims in Counts II and IV of her Complaint.

### 2.   Plaintiff has sufficiently pleaded a causal connection (prong 4)

Plaintiff also has the burden of pleading a causal connection between the protected activity and the adverse action. "To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007) (quotation marks omitted); *see also Hicks v. SSP America, Inc.*, 490 F. App'x 781, 785 (6th Cir. 2012). In Title VII retaliation cases, courts apply a but-for test to determine whether there is a causal connection between a plaintiff's protected activity and any adverse employment decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2012) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation.... This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). As the Sixth Circuit Court of Appeals recently noted, "the causation element of Title VII and the ELCRA are the same." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 349 n.5 (6th Cir. 2021); *see also Beard v. AAA of Michigan*, 593 F. App'x 447, 452 (6th Cir. 2014) (reasoning that  Michigan courts would interpret the ELCRA to require but-for causation).

"At the prima facie stage, this burden 'is not onerous,' and can be met through 'evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights.' " *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Where an adverse employment action occurs "very close in time" after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. *Yazdian v. ConMed Endoscopic Technologies, Inc.*, 793 F.3d 634, 650 (6th Cir. 2015). But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *Id.*; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality … uniformly hold that the temporal proximity must be 'very close.'") (citation omitted). And, even though close temporal proximity can support the causal element of a prima facie case of retaliation, an "intervening legitimate reason to discipline" an employee can

31

nevertheless defeat that inference." *Fletcher v. U.S. Renal Care*, 709 F. App'x 347, 353 (6th Cir. 2017) (citation omitted).

Defendant argues that Plaintiff has failed to plead that any purported adverse action was causally connected to her Title VII protected activity. (Def.'s Mot. at p. 13, PageID.97.)

At this stage of the litigation, Plaintiff "need only set forth minimal facts plausibly alleging" a causal connection. *Finley v. Miami Univ.*, 504 F. Supp. 3d 838, 849 (S.D. Ohio 2020) (citing *Dixon*, 481 F.3d at 333). As Defendant recognizes in its reply brief, "the standard for pleading causation in a retaliatory discharge case is minimal." (Def.'s Reply at p. 3, PageID.394) (quoting *Finley*, 504 F. Supp. 3d at 849). "That is, [Plaintiff] 'must put forth some fact creating an inference that the adverse action would not have occurred without the employee first engaging in protected activity.'" *Finley*, 504 F. Supp. 3d at 849-50.

Plaintiff has met this minimal burden here. She alleges in her Complaint that she made a number of complaints about KG's sexually harassing behavior toward her to two different ASMs and to a corporate Human Resources employee between November 2018 and March 2019, and that after making these claims, Defendant failed to take any remedial action and improperly disclosed her confidential and personal medical information, all leading to an exacerbation of her mental health

32

condition that left her unable to work. (Comp. ¶¶ 102-10.) These alleged adverse actions happened within a matter of months after Plaintiff first started complaining of KG's sexually harassing behavior. Those alleged facts, taken as true and construed in the light most favorable to Plaintiff, are enough to create a plausible inference that Defendant would not have taken these alleged adverse actions had Plaintiff not exercised her protected rights, and thus nudge her claims over the line at the pleading stage.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's retaliation claims in Counts II and IV of her Complaint for failure to state a claim.

### B.    Exhaustion of Plaintiff's Title VII Claims in Counts I and II

Defendant argues that Plaintiff's Title VII harassment and retaliation claims in Counts I and II of her Complaint that are outside the scope of her EEOC Charge must be dismissed for failure to exhaust administrative remedies and timeliness. (Def.'s Mot. at pp. 18-23, PageID.102-07.) Defendant contends that Plaintiff's EEOC Charge, which include two claims for (1) "Harassment/Not Sexual" and "Retaliation, Disability," and (2) Sexual Harassment, does not identify any of the persons identified in Plaintiff's Complaint, and only states that Plaintiff reported harassment on or around March 15, 2019 and that she was subjected to harassment on or around April 4, 2019. (*Id.*) Defendant states that Plaintiff's Complaint,

however, includes factual allegations that she reported internal complaints of sexual harassment in mid-to-late November 2018, in January 2019, and in March 2019. (*Id.* at pp. 19-20, PageID.103-04.) Defendant argues that the alleged conduct not expressly mentioned in her Charge must be dismissed for failure to exhaust administrative remedies. (*Id.* at pp. 21-22, PageID.105-06.)

Plaintiff argues in response that all of her Title VII claims are within the scope of her EEOC Charge. (Pl.'s Resp. at pp. 20-24, PageID.356-60.) She argues that her Title VII harassment and retaliation claims are all "reasonably related to" and/or "grow out of" the factual allegations in her Charge. (*Id.*) She states that she worked for Defendant for "a very short period of time in the small candy department of Defendant's store in Jackson, Michigan," and thus the store management personnel and Plaintiff's coworkers are easily identifiable. Plaintiff explains that the EEOC Charge was drafted by an EEOC staffer, not Plaintiff, and plainly states in three places that the April 4, 2019 date was the "most recent[]" date, not that it was the only date she was harassed. (*Id.*)

The failure to exhaust administrative remedies is a basis for dismissal of Title VII claims. *Russ v. Memphis Light Gas & Water*, 720 F. App'x 229, 236 (6th Cir. 2017). "To exhaust, an employee must file a charge of discrimination with the EEOC that includes all claims the employee intends to bring in district court." *Id.* (citing

*Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)). As a general

rule, Title VII plaintiffs cannot bring claims in a lawsuit that were not included in

their EEOC charge. *Younis*, 610 F.3d at 361 (citations omitted). The reason behind

this requirement is to give the EEOC an opportunity to settle disputes through

conference, conciliation, and persuasion before the aggrieved party is permitted to

file a lawsuit, as well as to put defendants on notice of the substance of the charge.

*See Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 470 (6th Cir. 2008) (citing *Dixon*

*v. Ashcroft,* 392 F.3d 212, 217 (6th Cir. 2004)). The charge must be "sufficiently

precise to identify the parties, and to describe generally the action or practices

complained of." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018)

(quoting 29 C.F.R. § 1601.12(b)).

Nevertheless, a Title VII plaintiff is not required to allege in an EEOC charge

"each and every fact that combines to form the basis of each claim." *Taylor v. W.*

*and S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992). Because "aggrieved

parties"—not attorneys—often file EEOC charges, "their *pro se* complaints are

construed liberally, so that courts may also consider claims that are reasonably

related to or grow out of the factual allegations in the EEOC charge." *Younis*, 610

F.3d at 362 (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th

Cir. 2006)). "As a result, 'whe[n] facts related with respect to the charged claim

35

would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" *Id.* (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)). Therefore, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* (quoting *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002)).

Defendant here does not argue that Plaintiff failed to allege a Title VII harassment or retaliation claim against it in the EEOC Charge, or that it otherwise was not on notice that Plaintiff was asserting such claims. Defendant in fact concedes that Plaintiff asserted those claims in her EEOC Charge. (Def.'s Mot. at p. 18, PageID.102.) Thus, this is not a case where, for example, the plaintiff alleges a retaliation claim but her charge of discrimination did not "check the box" for such a claim, and thus defendant claims it was not on notice of the claim. Indeed, Plaintiff's EEOC Charge states that it is based on the ADA, the ELCRA, the Michigan PWDCRA, and Title VII, and that Plaintiff alleges sexual harassment, disability discrimination, and retaliation claims. (EEOC Charge, PageID.31.)

Defendant instead only objects to specific factual allegations included in Plaintiff's Complaint that are not expressly included in the EEOC Charge. However, Defendant cites no authority for the proposition that every factual allegation in a

36

Complaint must be stated in the EEOC Charge. As stated above, courts will construe EEOC charges liberally. *See Younis*, 610 F.3d at 362; *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (noting that "where a claimant is unrepresented, a 'broader reading of the charge … is compelled") (citation omitted).

Plaintiff's EEOC Charge lists the "date of *most recent* or *continuing* discrimination" as April 4, 2019, and states throughout the Charge that the April 4th date was the "most recent[]" date on which she was subjected to harassment. (EEOC Charge, PageID.31 (emphasis added).) Although this phrasing in the Charge, drafted by an EEOC staffer, may be imprecise or equivocal, the Court finds that this language reasonably implies the existence of discriminatory conduct preceding April 4, 2019. In fact, the Charge also states that "respondent's representatives have made derogatory remarks regarding [her] disability *on multiple occasions*" and that she reported the harassment "and nothing was done." (*Id.* (emphasis added)). The Charge states that Defendant's "representative would make comments that were sexual in nature and make comments about [Plaintiff's] body," which she reported on or around March 15, 2019 "to the respondent's management and nothing was done." (*Id.*)

The Court should find that Plaintiff's EEOC Charge sufficiently identifies the parties (Plaintiff and Defendant) and describes generally the actions or practices

37

complained of. *See* 29 C.F.R. § 1601.12(b). A "plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citation omitted); *see also Taylor*, 966 F.2d at 1195 (reasoning that a plaintiff is not required "to allege in an EEOC charge each and every fact that combines to form the basis of each claim" because "[t]o compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection….") (citation omitted). The claims set forth in a complaint are therefore cognizable if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek*, 31 F.3d at 500; *cf. Van Brunt Piehler v. Absolute Software, Inc.*, 504 F. Supp. 3d 175, 190 n.5 (W.D.N.Y. 2020) (considering instances of alleged protected activity that were not mentioned in the EEOC charge because the charge provided "sufficient notice of the protected activity").

The additional factual allegations in Plaintiff's Complaint that Defendant complains of are "like or reasonably related to the allegations of the charge and growing out of such allegations" of harassment by KG, not separate claims, and they are reasonably related to the specific factual allegations made in the Charge

regarding the "most recent" events.[3] Further, Plaintiff's EEOC Charge was filed on June 24, 2019, and would cover all allegations in the preceding 300 days, or back to August 28, 2018. In other words, during Plaintiff's entire term of employment with Defendant. Thus, all allegations in the Complaint are timely.

Finally, while Plaintiff did not specifically identify in the EEOC Charge the individual supervisors she complained to, the parties to the Complaint – Plaintiff and Defendant – are plainly identified in the Charge. And, as Plaintiff argues in her response brief, because there is no personal liability under either Title VII or the

---

[3] Defendant's reliance in its motion on the unpublished, out-of-circuit case, *Villa v. Arizona*, No. CV-17-03557, 2019 WL 1858138 (D. Ariz. Apr. 25, 2019), is misplaced. In *Villa*, the Arizona district court held that the plaintiff's claims against individuals who were not named in the EEOC charge (which did name one individual), and who were alleged to have engaged in entirely different discriminatory acts on different dates and at different locations, were not exhausted. *Id.* The *Villa* court acknowledged, however, that "it is true that 'Title VII charges can be brought against persons not named in an E.E.O.C. complaint as long as they were involved in the acts giving rise to the E.E.O.C. claim.'" *Id.* at *12 (quoting *Wrighten v. Metropolitan Hosp.*, 726 F.2d 1346, 1352 (9th Cir. 1984)). In this case, Plaintiff complains about KG's alleged sexually harassing behavior during her short employment with Defendant, and of the improper disclosure of her personal and confidential medical information – the same acts giving rise to her EEOC Charge.

Similarly, *Cantu v. Michigan Department of Corrections*, 653 F. Supp. 2d 726 (E.D. Mich. 2009), cited by Defendant in its reply brief, does not compel a different result. In *Cantu*, the court excluded the plaintiff's allegations of violations predating March 4, 2006, because the plaintiff's EEOC charge "contains absolutely no reference to civil rights violations prior to" that date. *Id.* at 737. In this case, Plaintiff's EEOC charge repeatedly states that April 4, 2019 is the "date of most recent or continuing discrimination," not the only date. (EEOC Charge, PageID.31.)

39

ADA, it makes no sense that individual employees or supervisors should be considered "parties" at the EEOC charge stage. (Pl.'s Resp. at p. 23, PageID.359.)

Accordingly, the Court finds that Plaintiff's Title VII claims in her Complaint are reasonably related to the factual allegations in the EEOC Charge and therefore she has properly exhausted her administrative remedies for these claims.[4]

### IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's partial motion to dismiss.

Defendant is **ORDERED** to file an amended answer to Plaintiff's Complaint within fourteen (14) days.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: January 12, 2022

---

[4] Because the Court is denying Defendant's Partial Motion to Dismiss, it need not address Plaintiff's request in her response brief that she be allowed leave to amend her Complaint.

40